UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ERICKSON BEAMON LTD.,

                Plaintiff,

       - against -

CMG WORLDWIDE, INC., and
THE ESTATE OF BETTE DAVIS,

                Defendants.
----------------------------------------X

**MEMORANDUM AND ORDER**

12 Civ. 5105 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff Erickson Beamon Ltd. ("plaintiff") brings this action for a declaratory judgment of trademark non-infringement, non-violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and non-infringement of certain rights of publicity with respect to its jewelry line called "The Bette Davis Eyes" collection. Defendants CMG Worldwide, Inc. ("CMG") and the Estate of late movie star Bette Davis (the "Estate") (collectively, "defendants") have asserted that plaintiff's jewelry line violates those intellectual property rights. Presently before the Court are two motions: defendants' motion to dismiss the action or, in the alternative, to stay or transfer it to the Southern District of Indiana, and plaintiff's cross-motion to enjoin the prosecution of the Indiana action.

For the reasons set forth below, we deny defendants' motion to dismiss or transfer the action.  We further deny plaintiff's cross-motion to enjoin the prosecution of the Indiana action.

## BACKGROUND[1]

Plaintiff is a New York corporation that designs and distributes jewelry for sale in 75 nations worldwide.  (Compl. ¶¶ 1, 16); www.ericksonbeamon.com (last visited Aug. 8, 2013). One defendant is the Estate, which is co-executed by Michael Merrill, an individual residing in Massachusetts.  (Id. ¶ 3.) CMG, the other defendant, is the exclusive licensing agent for the Estate as to Bette Davis's intellectual property, is an Indiana corporation with its principal places of business in Indianapolis and Los Angeles, California.  (Id. ¶ 2; see Def. Mem. at 5.)

In or about late 2010, plaintiff launched a jewelry line called the "Bette Davis Eyes" collection. (Compl. ¶ 17.) Specifically, plaintiff has used that name in the advertisement,

---

[1] The following facts are drawn from the Complaint ("Compl."); Defendants' Memorandum of Law in Support of its Motion to Dismiss or, in the Alternative, to Transfer or to Stay ("Def. Mem."); the Declaration of Theodore J. Minch in Support of Defendants' Motion to Dismiss or, in the Alternative, to Transfer or to Stay ("Minch Decl."); the Declaration of J. Brock Herr in Support of Defendants' Motion to Dismiss or, in the Alternative, to Transfer or to Stay ("Herr Decl."); Plaintiff's Opposition to Defendants' Motion to Dismiss or, in the Alternative, to Transfer or to Stay ("Pl. Opp."); the Declaration of Monique Erickson in Opposition to Defendants' Motion to Dismiss or, in the Alternative, to Transfer or to Stay ("Erickson Decl."); Defendants' Reply Memorandum in Support of its Motion to Dismiss or, in the Alternative, to Transfer or to Stay (Def. Reply Mem."); and the Reply Affirmation of Theodore J. Minch in Support of Defendants' Motion to Dismiss or, in the Alternative, to Transfer or to Stay ("Minch Reply Affirm.").

marketing, and distribution of various jewelry items, including, but not limited to, the "Erickson Beamon Bette Davis Necklace," the "Erickson Beamon Bette Davis Ring," the "Erickson Beamon green Bette Davis Eyes Ring," the "Erickson Beamon Bette Davis Eyes Earrings," and the "Erickson Beamon Bette Davis Eyes Bracelet," (see Def. Mem. at 5-6.), which were distributed for sale at retailers throughout the United States. (Herr Decl. ¶ 4.) While defendants do not submit that plaintiff's jewelry items depict any image or likeness of the actress Bette Davis (see Minch Decl. Exs. 1-8), it is undisputed that plaintiff selected and used the "Bette Davis Eyes" name without prior express authorization from the Estate. (Id. ¶ 21; Herr Decl. ¶ 4.)

In September 2011, upon learning about plaintiff's jewelry line, CMG, acting on behalf of the Estate, sent correspondence to plaintiff advising that it believed the use of Bette Davis's name was unauthorized and, as such, constituted an infringement of the Estate's rights in and to her name, likeness, and image. (Def. Mem. at 2; Herr Decl. ¶ 4.) Nearly ten months of consistent settlement negotiations ensued thereafter between CMG and plaintiff's outside litigation counsel. (Herr Decl. ¶ 4.) Defendants concede that throughout these negotiations, CMG did not threaten litigation "but instead made clear to counsel for

Erickson Beamon that CMG and its client, the Estate of Bette Davis, preferred to work out the issue of Erickson Beamon's unauthorized use of the name, image, and/or likeness of Bette Davis in an amicable fashion." (Id.; see also id. Ex. A, at 2.) Nevertheless, no such settlement was reached. (Id.)

On June 29, 2012, plaintiff filed the instant lawsuit seeking declaratory relief. (Compl. ¶¶ 31-49.) Specifically, plaintiff's complaint for declaratory relief asserts that its collection was named for the song "Bette Davis Eyes," recorded by pop singer Kim Carnes in 1981, and has never used Bette Davis's likeness or in any other way affiliated itself with the late actress. (Id. ¶¶ 7-8, 17.) It further maintains that consumers of its jewelry are unaware of the actress Bette Davis, despite the popularity of Ms. Carnes' recording. (Id. ¶ 19.) Essentially, plaintiff's complaint alleges that, but for the popularity of Ms. Carnes' recording of "Bette Davis Eyes," consumers of plaintiff's jewelry would be completely unfamiliar with the name Bette Davis. (Compl. ¶ 18.) Plaintiff therefore vehemently denies any usurpation of Bette Davis's name, likeness, or rights of publicity.

On July 2, 2012, and defendants allege without prior notice, plaintiff's counsel notified counsel for CMG that it had

filed an action for declaratory relief in this Court.  (Id.; see dkt. no. 1.)

On November 16, 2012, CMG filed a lawsuit in the Southern District of Indiana.  See Compl., CMG Worldwide, Inc. and The Estate of Bette Davis v. Erickson Beamon Ltd. et al., No. 1:12-cv-1687 (JMS) (S.D. Ind. Nov. 16, 2012) (dkt. no. 1.)

On December 17, 2012, defendants filed the instant motion to dismiss or, in the alternative, to stay or to transfer this action to the U.S. District Court for the Southern District of Indiana.  (Dkt. no. 33.)  On January 18, 2013, plaintiff filed a one-page motion, with no supporting memorandum of law, to enjoin defendants from prosecuting the Indiana action.  (Dkt. no. 28.) Four days later, plaintiff opposed defendants' motion to dismiss.  (Dkt. no. 29.)  Defendants filed their reply on February 9, 2013.  (Dkt. no. 38.)

## DISCUSSION

### I. Defendants' Motion to Dismiss or Stay the New York Action Pending Resolution of the Indiana Action

#### A. Legal Standards

Plaintiff brings her action under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).  Primarily defendants argue that plaintiff's claims are improperly brought under that provision because they "were brought in anticipation of the coercive suit

for the purposes of gaining home field advantage." (Def. Mem. at 8.)

Where two courts have concurrent jurisdiction over an action involving the same parties and issues, courts will follow a "first-filed" rule whereby the court which first has possession of the action decides it." Schnabel v. Ramsey Quantitative Sys., Inc., 322 F. Supp. 2d 505, 509-510 (S.D.N.Y. 2004); see also D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006) ("[W]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second.") (quoting First City Nat'l Bank & Trust v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989); Buddy USA, Inc. v. Recording Indus. Ass'n of Am., Inc., 21 Fed. App'x 52, 55, 2001 WL 1220548, at *2 (2d Cir. 2001). Moreover, "The court before which the first-filed action was brought determines which forum will hear the case." MSK Ins., Ltd. v. Employers Reinsurance Corp., 212 F. Supp. 2d 266, 267 (S.D.N.Y. 2002) (citing cases).

The presumption in favor of the first-filed suit, however, "is not to be applied in a rigid or mechanical way." Dornoch Ltd. v. PBM Holdings, Inc., 666 F. Supp. 2d 366, 369 (S.D.N.Y. 2009) (internal quotation marks omitted). Indeed, "[t]he

complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion." Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2006).

The "special circumstances" in which a district court may dismiss the first-filed case without conducting an analysis of the "balance of convenience" are rare. Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc., 522 F.3d 271, 275 (2d Cir. 2008). One such special circumstance "exists where the first-filed lawsuit is an improper anticipatory declaratory judgment action." Id. Another special circumstance exists "where forum shopping alone motivated the choice of the situs for the first suit." William Gluckin & Co. v. Int'l Playtex Corp., 407 F.2d 177, 178 (2d Cir. 1969).

One type of special circumstance is present where the first, declaratory action is filed in response to a direct threat of litigation. "When the declaratory action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the plaintiffs' chosen forum." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 219 (2d Cir. 1978), cert. denied, 440 U.S. 908 (1979); see also Pharm. Resources,

Inc. v. Alpharma USPD Inc., 2002 WL 987299, at *3 (S.D.N.Y. May 13, 2002) (An 'apparent threat' has been found where there is an overt statement that a party intends to commence litigation.") (quoting Hanson PLC v. Metro-Goldwyn-Mayer Inc., 932 F. Supp. 104, 107 (S.D.N.Y. 1996)); 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 132-33 (S.D.N.Y. 1994).  "Where a party is prepared to pursue a lawsuit, but first desires to attempt settlement discussions, that party should not be deprived of the first-filed rule's benefit simply because its adversary used the resulting delay in filing to proceed with the mirror image of the anticipated suit." Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp. 1144 (S.D.N.Y. 1995).

Following Factors, district courts have also found an exception to the first-filed rule where declaratory actions are filed in response to demand letters that give specific warnings as to deadlines and subsequent legal action.  See Fed. Ins. Co. v. May Dep't Stores Co., 808 F. Supp. 347, 350 (S.D.N.Y. 1992)(can infer forum shopping from the fact that the declaratory action was filed after receipt of letter notice stating that if the sender's claim was not satisfied by a specific date, then defendant would sue); Chicago Ins. Co. v. Holzer, 2000 WL 777907 at *1 (S.D.N.Y. June 16, 2000) (specific warning requirement met by a notice letter stating that if the

recipient's decision "remains unaltered, we will commence suit in a court of appropriate jurisdiction in forty eight (48) hours"); Mondo, Inc. v. Spitz, 1998 WL 17744 at *1 (S.D.N.Y. Jan. 16, 1998)(reached similar conclusion where declaratory judgment action was filed after receipt of a letter stating the sender's "intention to file suit in California if settlement negotiations were not fruitful").

By contrast, district courts have often refused to characterize a suit as anticipatory where it is filed in response to a notice letter that does not explicitly "inform[] a defendant of the intention to file suit, a filing date, and/or a specific forum for the filing of the suit . . . ." J. Lyons & Co., Ltd. v. Republic of Tea, Inc., 892 F. Supp. 486, 491 (S.D.N.Y. 1995). For example, a declaratory action is not anticipatory where it is filed in response to a letter that is indicative of negotiations. See, e.g., id. at 491 (finding insufficient sender's demand letter which mentioned "the possibility of legal actions" without specifying date or forum, and when the alleged infringer refused to cease and desist, the sender merely responded that it would take the refusal "under advisement"); see also Employers Ins. of Wausau v. Prudential Ins. Co., 763 F. Supp. 46, 49 (S.D.N.Y. 1991) (finding letter containing no explicit mention of an intent to sue, tentative

filing date or a forum to be an invitation to initiate settlement negotiations and not to constitute notice of suit).

A second special circumstance exists "where forum shopping alone motivated the choice of the situs for the first suit." William Gluckin & Co. v. Int'l Playtex Corp., 407 F.2d 177, 178 (2d Cir. 1969); see also Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc., No. 12 CV 3858 (KMW) (JLC), 2012 WL 2065294, at *5 (S.D.N.Y. June 7, 2012). In order for forum shopping to constitute a special circumstance, "the first-filing plaintiff must engage in some manipulative or deceptive behavior, or the ties between the litigation and the first forum must be so tenuous or de minimis that a full 'balance of convenience' analysis would not be necessary to determine that the second forum is more appropriate than the first." Fox, 522 F.3d at 276.

## B. **Analysis**

There is no dispute that the instant action was filed before the Indiana action, or that the actions involve similar parties and issues. Thus, the question of whether the first-filed rule applies turns on whether the New York action was, as defendants contend, improperly anticipatory.

The September 13, 2011 cease and desist letter sent to plaintiff by counsel for defendants is insufficient, on its own,

to warrant dismissal under the improper anticipatory action exception to the first-filed rule. That letter contained no specific warning of impending litigation, but rather threatened pursuit of other legal options in the most general terms. (See Herr Decl. Ex. A, at 2 ("Should you fail to comply with our request, please be advised that our client is prepared to utilize all legal avenues available to ensure that all such unauthorized use ceases and that our client is fairly compensated for such past unauthorized use."))  A general threat of that sort, without further detail as to the impending date and place of filing, does not rise to the level of special circumstances.  See, e.g., Hanson PLC v. Metro-Goldwyn-Mayer Inc., 932 F. Supp. 104, 107 (S.D.N.Y. 1996); Pharm. Res., Inc., 2002 WL 987299, at *3 ("An apparent threat has been found where there is an overt statement that a party intends to commence litigation." (internal quotation marks omitted)).

     Next, defendants rely on the nearly ten months of settlement negotiations – which continued until plaintiff filed the instant complaint on June 29, 2012 – as a basis to invoke the exception to the first-filed rule.  We have not been provided copies of that correspondence, but it is well established that even consistent settlement negotiations do not constitute a sufficient threat of litigation to warrant an

exception to the first-filed rule.  <u>See, e.g.</u>, <u>Schnabel</u>, 322 F. Supp. 2d at 511-12 ("[A] declaratory judgment is considered anticipatory if filed in response to a demand letter specifically threatening litigation, but is not anticipatory where it is in response to a negotiating letter." (citing <u>Factors</u>, 579 F.2d at 219) (internal quotation marks omitted)). Further, the considerable lapse in time between the filing of plaintiff's complaint in this Court on June 29, 2012 and the filing of defendants' complaint in Indiana on November 16, 2012 indicates that plaintiff did not commence the instant action under an immediate threat of litigation.

Nor do we agree with defendants' contention that plaintiff was merely forum shopping when it filed this action in federal court in New York.  (<u>See</u> Def. Mem. at 11.)  "Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice."  <u>Schnabel</u>, 322 F. Supp. at 513-14.  Thus, a party who appropriately files a declaratory judgment in the forum most convenient to him to resolve a ripe legal dispute is not engaged in forum shopping. <u>See, e.g.</u>, <u>J. Lyons & Co.</u>, 892 F. Supp. at 491.  Here, plaintiff is incorporated and headquartered in New York and conducts all of its domestic business from its showroom here.  (Erickson

Decl. ¶¶ 2-3.)   Indeed, all of plaintiff's sales activities, both domestic and international, are directed from its Manhattan, New York office.  (Id. ¶ 4.)   Thus, plaintiff's choice of this forum cannot be said to suggest forum shopping.

Defendants also contend that plaintiff's suit is improperly filed here because it seeks only a declaratory judgment; while the issues raised in the second-filed Indiana action are all encompassing, the reverse is not true.  Defendants suggest that we should therefore dismiss the complaint.  (See Def. Mem. at 12.)  "[H]owever, the mere fact than an action is brought as one for a declaratory judgment does not necessarily mean that it constitutes an anticipatory filing for purposes of an exception to the first filed rule."  Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995) (quoting 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 132 (S.D.N.Y. 1994)) (internal quotation marks omitted).   We further note that multiple defendants in the Indiana action, including plaintiff here and an internet retailer, have filed motions to dismiss in that court for lack of jurisdiction.  See Def. Erickson Beamon, Ltd.'s Mot. to Dismiss for Lack of Jurisdiction, CMG Worldwide, Inc. and The Estate of Bette Davis v. Erickson Beamon Ltd. et al., No. 1:12-cv-1687 (JMS) (S.D. Ind. Mar. 18, 2013) (dkt. no. 19); Def.

PopSugar, Inc.'s Mot. to Dismiss for Lack of Jurisdiction, <u>CMG Worldwide, Inc. and The Estate of Bette Davis v. Erickson Beamon Ltd. et al.</u>, No. 1:12-cv-1687 (JMS) (S.D. Ind. June 7, 2013) (dkt. no. 42). Those motions are currently pending. Thus, the resolution of plaintiff's otherwise valid claim for declaratory relief in the Indiana action is less than certain.

In sum, absent their reliance on the threat of litigation argument rejected above, defendants offer no special circumstances warranting an exception to the first-filed rule here. (<u>See</u> Def. Reply Br. at 12.) Accordingly, we deny defendants' motion to dismiss.

## II. Defendants' Motion to Transfer Venue to the Southern District of Indiana

If not dismissed, defendants seek an order transferring the instant action to the Southern District of Indiana. They submit that personal jurisdiction over plaintiff exists there, that it is a proper venue for the instant action, and the balance of convenience factors, as well as the interests of justice, counsel in favor of transfer. For the reasons that follow, we find that transfer to the Southern District of Indiana would be improper because that court lacks personal jurisdiction over plaintiff.

### A. <u>Legal Standards</u>

Section 1404(a) permits a district court to transfer a civil action to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of the provision is to "protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotation and citation omitted). The burden is on the moving party to make a clear and convincing showing that the action is one that might have been brought in the proposed transferee forum, and that transfer would promote convenience and justice. See Fteja v. Facebook, Inc., 841 F. Supp. 2d 829, 832 (S.D.N.Y. 2012).

Before we can transfer an action to another venue, we must first determine whether the action may properly be transferred there pursuant to 28 U.S.C. § 1404(a). See Ontel, 899 F. Supp. at 1153 (S.D.N.Y. 1995). In particular, courts must ask whether (1) the action could have been brought in the proposed transferee district in the first instance; and (2) if so, whether the case should be transferred there under § 1404(a) as a matter of judicial discretion. See Fox, 522 F.3d at 275; Michael Miller, 2012 WL 2065294, at *5.

Where the transferee district is a proper venue, "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and

fairness on a case-by-case basis." Schoenefeld v. New York, No. 08 Civ. 3269 (NRB), 2009 WL 1069159, at *2 (S.D.N.Y. Apr. 16, 2009) (citing In re Cuyahoga Equip Corp., 980 F.2d 110, 117 (2d Cir. 1992)) (internal quotation marks omitted). Among the factors to be considered in deciding whether to grant a motion to transfer venue are: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the relative means of the parties; (4) the locus of the operative events; (5) the relative ease of access to sources of proof; (6) the weight accorded to plaintiff's choice of forum; (7) the availability of process to compel unwilling witnesses; (8) the forum's familiarity with the governing law; and (9) trial efficacy and the interests of justice based upon the totality of the circumstances. See Schoenefeld, 2009 WL 1069159, at *2; see also New York Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010).

The above factors do not comprise an exclusive list, nor are they to be applied in a mechanical or formulaic manner. "Rather, they, and any other factors peculiar to the particular case in question, serve as guideposts to the Court's informed exercise of discretion." Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002).

**B. Analysis**

As stated above, we must first determine whether defendants' proposed transferee district of the Southern District of Indiana is a proper venue for the instant action. Defendants submit that it is, given its offices there and plaintiff's business contacts with the forum. (See Def. Mem. at 21-22.) For the reasons that follow, we disagree.

### a. Whether the Southern District of Indiana has Personal Jurisdiction over Plaintiff

We interpret defendants' arguments to rely on three theories of personal jurisdiction: First, they claim that plaintiff maintains "systemic contact" with Indiana by virtue of its business dealings there, warranting the exercise of general jurisdiction. They further contend that plaintiff has committed a substantial portion of the alleged infringement in the Southern District of Indiana, giving rise to specific personal jurisdiction there. Lastly, defendants argue that long-arm jurisdiction exists because defendants have caused advertising and promotional materials to be distributed there, resulting in tortious injury within the transferee forum. (Def. Mem. at 16.) In response, plaintiff argues that it has not "purposely exploited the [venue's] market" and thus any contacts it has with the transferee forum are insufficient to establish personal jurisdiction. (Pl. Opp. at 5.)

17

"A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." Pursue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 779 (7th Cir. 2003). Indiana courts assert jurisdiction over defendants in any way that is consistent with the Federal Due Process Clause. LinkAmerica Corp. v. Albert, 857 N.E.2d 961, 967 (Ind. 2006).

Plaintiff correctly observes that the Due Process Clause requires that defendants have minimum contacts with the forum state. Int'l Shoe Corp. v. Washington, 326 U.S. 310, 316 (1945). Indiana courts interpret minimum contacts to require that defendants "purposefully direct their business activities at the state or at least purposefully avail themselves of the benefits of that state." MacDermid Printing Solutions, LLC v. Clear Stamp, Inc., No. 3:12-CV-259 JVB, 2013 WL 3176887, at *3 (N.D. Ind. June 21, 2013) (citing Tamburo v. Dworkin, 601 F.3d 693 (7th Cir. 2010)); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985). In almost all cases, there must be a direct link between the defendant's activities and the forum state. LinkAmerica, 857 N.E.2d at 968.

In addition, the Supreme Court distinguishes between two types of personal jurisdiction: general and specific.

<u>Helicopteros Nacionales de Columbia v. Hall</u>, 466 U.S. 408, 414-15 (1984).  General jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state.  <u>Id.</u> at 416.  If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts."  <u>Hyatt Int'l Corp. v. Coco</u>, 302 F.2d 707, 715 (7th Cir. 2003).  Specific jurisdiction is more limited; in addition to establishing the existence of minimum contacts, a plaintiff must show that the alleged controversy between the parties "arise[s] out of" or "relate[s] to" the defendant's forum contacts.  <u>Id.</u>

Here, plaintiff maintains no contacts with the Southern District of Indiana except for internet-based contact via its website, accessible by users worldwide, on which it advertises its collection, provides information about retail locations and links to online retailers.  (Erickson Decl. ¶ 10); <u>see</u> www.ericksonbeamon.com.  According to defendants, plaintiff has offered the unauthorized merchandise for sale and distribution on its website, www.ericksonbeamon.com, since late 2012.  (Herr Decl. ¶ 4; <u>see</u> Defs. Mem. at 6.)  However, plaintiff maintains that its website does not permit online purchases, user registration, or the posting of comments.  (Erickson Decl. ¶ 10;

19

see Pl. Opp. at 8.)   Indeed, plaintiff avers that the only opportunity for user interaction with its website is an option to email plaintiff directly by clicking on the "Contact Us" tab. (Erickson Decl. ¶10); see http://www.ericksonbeamon.com (last visited September 20, 2013).   However, the website does provide a list of retailers nationwide, which includes a listing for the "French Pharmacie" in Indianapolis, Indiana.   Plaintiff submits that French Pharmacie ceased being a retailer of its jewelry in 2008 and has purchased no Erickson Beamon products since that time.[2]  (See Erickson Decl. ¶ 7).   It further submits that it has never sold any items from the Bette Davis Eyes collection to the French Pharmacie in Indianapolis.   See id. ¶ 8.

Based on the above, we find that the accessibility of plaintiff's website, www.ericksonbeamon.com, within the forum state is insufficient to subject it to personal jurisdiction there.   It is undisputed that the website does little more than provide information to its users.   (Erickson Decl. ¶ 10; Minch Decl. ¶ 4.)   Moreover, it does so universally, without specifically targeting users in the state of Indiana.   The Seventh Circuit has found that where a defendant merely operates a website, even a "highly interactive" website, that is accessible from, but does not target, the forum state, the

---

[2] Plaintiff further submits that any listing of French Pharmacie as an Erickson Beamon retailer on its website, www.ericksonbeamon.com, is in error.  (Id. ¶ 11.)

defendant cannot be haled into court in that state without offending the Constitution.  be2 LLC v. Ivanov, 642 F.3d 555, 559 (7th Cir. 2011); see also Advance DX, Inc. v. Health Point Diagnostix, Inc., No. 1:12-cv-0756-TAB-TWP, 2012 WL 3782026, at *2 (S.D. Ind. July 17, 2013).  Moreover, defendants point to no sales of plaintiff's Bette Davis Eyes jewelry in Indiana whatsoever.  To the contrary, plaintiff maintains that it has not sold a single item from that collection in Indiana to date. (Erickson Decl. ¶ 8.)  Nor has plaintiff purposefully availed itself of doing business in the state, given that it conducts no business there, does not advertise there, and has not distributed its jewelry to a retailer there since 2008.  (Id. ¶¶ 6-8.)

Thus, because plaintiff lacks sufficient contacts with the Southern District of Indiana, we find that transfer to that forum would not be proper.

### b. Venue and Balance of Convenience Factors

Because we find that the District Court for the Southern District of Indiana lacks personal jurisdiction over plaintiff, we need not reach the venue analysis and balance of convenience factors in order to conclude that the motion to transfer venue is improper.  See 28 U.S.C. § 1404(a) (providing that a district

court may transfer any civil action to any other district "where it might have been brought").

### III. <u>Plaintiff's Motion to Enjoin the Prosecution of the Indiana Action</u>

Finally, in a one-page notice of motion, plaintiff moves this Court to enjoin defendants' prosecution of the Indiana action, relying solely on <u>City of New York v. Exxon Corp.</u>, 932 F.2d 1020 (2d Cir. 1991).

Beyond the failure to submit a memorandum of law in support of that motion, we find that plaintiff's reliance on <u>Exxon</u> is misplaced. There, the Court of Appeals for the Second Circuit concluded that a district court sitting in New York had properly enjoined litigation of the City's damages under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 <u>et</u> <u>seq.</u>, in bankruptcy proceedings in California, despite the City having filed its bankruptcy action first, because the California court was presented with similar issues in related actions and because litigation of the City's CERCLA claim in the bankruptcy proceeding could have resulted in a withdrawal of the reference. <u>See</u> <u>id.</u> at 1025-26. Neither of those considerations is present in this case. Accordingly, we deny the motion to enjoin.

## CONCLUSION

For the aforementioned reasons, defendants' motion to dismiss or, in the alternative, to stay or transfer is denied. Plaintiff's motion to enjoin the prosecution of the Indiana action is also denied.   The Clerk of the Court is directed to terminate the motions pending at docket nos. 28 and 33.


SO ORDERED.

DATED:     New York, New York
           September 25, 2013


                        NAOMI REICE BUCHWALD
                        UNITED STATES DISTRICT JUDGE

23

Copies of the foregoing Order have been mailed on this date to the following:

**Attorneys for Plaintiff**
Jeffrey Sonnabend, Esq.
SonnabendLaw
600 Prospect Avenue
Brooklyn, N.Y. 11215

**Attorneys for Defendant**
Theodore J. Minch, Esq.
SovichMinch LLP
10099 Chesapeake Drive, Suite 100
McCordsville, IN 46055

Bonne L. Mohr, Esq.
Law Offices of Bonnie L. Mohr, PLLC
380 Lexington Avenue, Suite 1613
New York, N.Y. 10168

24