UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ERICKSON BEAMON LTD.,

                    Plaintiff,

                                                    **MEMORANDUM AND ORDER**

  - against -                                        12 Civ. 5105 (NRB)

CMG WORLDWIDE, INC., and
THE ESTATE OF BETTE DAVIS

                    Defendants.
------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     Plaintiff Erickson Beamon Ltd. ("Erickson Beamon" or "plaintiff") brings this action for a declaratory judgment of trademark non-infringement, non-violation of section 43(a) of the Lanham Act, and non-infringement of certain rights of publicity with respect to its "Bette Davis Eyes" jewelry collection.  Defendants CMG Worldwide, Inc. ("CMG") and the Estate of the late movie star Bette Davis (the "Estate") (collectively, "defendants") maintain that plaintiff's jewelry line does, in fact, infringe those intellectual property rights.  Presently before the Court is plaintiff's motion to dismiss the affirmative defenses and counterclaims asserted in defendants' answer to the complaint.  For the reasons set forth below, we grant plaintiff's motion in part and deny it in part.

**BACKGROUND**

Erickson Beamon is a New York corporation that designs and distributes jewelry for sale in seventy-five nations worldwide. Compl. ¶¶ 1, 16. In late 2010, plaintiff launched a jewelry line called the "Bette Davis Eyes" collection. Id. ¶ 2. The "Bette Davis Eyes" name was used in the advertisement, marketing, and distribution of various jewelry items, including necklaces, rings, earrings, and bracelets. Countercl. ¶ 15. The "Bette Davis Eyes" line of jewelry was made available both at online retailers and at physical stores throughout the United States. Id. ¶ 18.

It is undisputed that plaintiff used the name "Bette Davis" in connection with its jewelry without authorization from either the Estate or from CMG, the Estate's exclusive licensing agent for Bette Davis's intellectual property. Compl. ¶¶ 2, 21. However, plaintiff maintains that its jewelry actually references "Bette Davis Eyes," a song originally written in 1974 and which achieved popularity when recorded by Kim Carnes in 1981. Id. ¶¶ 7-9. While plaintiff asserts that "consumers associate the phrase 'Bette Davis Eyes'" with the song, id. ¶ 15, defendants contend that "consumers will mistakenly believe" that plaintiff's merchandise is somehow affiliated with the actress herself, Countercl. ¶ 30. In September 2011, upon

learning about the jewelry line, CMG sent a letter to Erickson Beamon which stated defendants' belief that the use of Bette Davis's name was unauthorized and, as such, constituted an infringement of the Estate's rights in and to the actress's name and likeness.  Countercl. ¶ 20.

On June 29, 2012, plaintiff filed a lawsuit in this Court seeking declaratory relief and an injunction which stated that its use of the "Bette Davis Eyes" name for its jewelry line did not infringe on defendants' intellectual property rights. Compl. ¶ 50.  Defendants responded on December 17, 2012 by filing a motion to dismiss or, in the alternative, to stay or transfer this action to the U.S. District Court for the Southern District of Indiana.[1]  We denied this motion on September 25, 2013.  See Erickson Beamon Ltd. v. CMG Worldwide, Inc., No. 12 Civ. 5105(NRB), 2013 WL 5355010, at *9 (S.D.N.Y. Sept. 25, 2013).  Defendants then filed a motion for reconsideration, which we denied on November 12, 2013.

Having lost their motion for dismissal or transfer, defendants answered plaintiff's complaint on November 25, 2013. The answer included eleven affirmative defenses and a seven-

---

[1] Defendants had filed their own lawsuit in the U.S. District Court for the Southern District of Indiana on November 16, 2013, seeking damages and injunctive relief based on plaintiff's unauthorized use of the "Bette Davis" name.  See generally Complaint, CMG Worldwide, Inc. v. Erickson Beamon Ltd., No. 1:12-cv-1687 (JMS) (S.D. Ind. Nov. 16, 2012).  This action was ultimately transferred to this Court and then voluntarily dismissed by CMG and the Estate on December 17, 2013.

count counterclaim.  On December 16, 2013, plaintiff filed a motion to dismiss defendants' affirmative defenses pursuant to Federal Rules of Civil Procedure 12(c) and 12(h)(2), and to dismiss defendants' counterclaims under Federal Rule of Civil Procedure 12(b)(6).  See Pl.'s Mot. to Dismiss Countercls. & Affirmative Defenses ("Pl.'s Mot.") at 1.  This motion was filed in violation of Rule 2(B) of our Individual Practices, which requires that parties submit a letter requesting a pre-motion conference in advance of filing a non-discovery motion.  Despite this violation, we considered the relative merits of plaintiff's motion and defendants' opposition brief before conducting a teleconference with the parties on January 14, 2014.  In discussing the case with the parties, we expressed our initial concerns about the usefulness of plaintiff's motion and voiced skepticism regarding whether it had the potential to resolve or even advance this litigation.  Nevertheless, plaintiff's counsel wished to proceed, and he filed the reply brief the next day.

## DISCUSSION

### I.   Motion to Strike Affirmative Defenses

#### A.   Legal Standard

Although plaintiff seeks dismissal of defendants' affirmative defenses pursuant to Rule 12(h)(2) of the Federal Rules, the proper provision is actually Rule 12(f).  Compare

4

Fed. R. Civ. P. 12(h) (stating the rule for waiving and preserving defenses), with Fed. R. Civ. P. 12(f) (describing the circumstances when a court may strike defenses from a pleading). Under Rule 12(f), either party may move to strike from a pleading "any insufficient defense or any . . . immaterial [or] impertinent" allegations.   Fed. R. Civ. P. 12(f).   "An allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action." Anderson v. Davis Polk & Wardwell LLP, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012) (internal quotation marks omitted).

Motions to strike affirmative defenses are generally disfavored, see Salcer v. Envicon Equities Corp., 744 F.2d 935, 939 (2d Cir. 1984), vacated on other grounds, 478 U.S. 1015 (1986), and in considering such a motion, all reasonable inferences will be drawn in favor of the non-moving party, see Diesel Props S.r.L. v. Greystone Bus. Credit II LLC, No. 07 Civ. 9580(HB), 2008 WL 4833001, at *4 (S.D.N.Y. Nov. 5, 2008).  For a plaintiff to prevail on a motion to strike an affirmative defense: "(1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense."  Coach, Inc. v. Kmart Corps., 756 F. Supp. 2d 421, 425

(S.D.N.Y. 2010); accord Cognex Corp. v. Microscan Sys., Inc., 990 F. Supp. 2d 408, 418 (S.D.N.Y. 2013).  Federal courts enjoy broad discretion in granting motions to strike, see Orientview Techs. LLC v. Seven for All Mankind, LLC, No. 13 Civ. 0538(PAE), 2013 WL 4016302, at *3 (S.D.N.Y. Aug. 7, 2013), but courts "should not tamper with the pleadings unless there is a strong reason for so doing." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976).

Despite the burden on the party moving to strike, plaintiff argues that defendants' affirmative defenses must meet the plausibility standard outlined in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2008), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  See Pl.'s Mot. at 2.  "Since the Supreme Court's Twombly and Iqbal decisions, district courts have disputed whether [the] 'plausibility standard' applies to affirmative defenses as well." Scott v. WorldStarHipHop, Inc., No. 10 Civ. 9538(PKC)(RLE), 2012 WL 5835232, at *2 (S.D.N.Y. Nov. 14, 2012); compare E.E.O.C. v. Kelley Drye & Warren, LLP, No. 10 Civ. 655(LTS)(MHD), 2011 WL 3163443, at *2 (S.D.N.Y. July 25, 2011) ("[M]ost lower courts that have considered the question of the standard applicable to pleading of defenses have held that the Rule 12(b)(6) standard, as elucidated in Twombly and Iqbal, governs the sufficiency of the pleading of affirmative

defenses."), <u>with</u> <u>Hon-Hai Precision Indus. Co., Ltd. v. Wi-LAN,</u> <u>Inc.,</u> No. 12 Civ. 7900(SAS), 2013 WL 2322675, at *9 (S.D.N.Y. May 28, 2013) ("The majority of district courts in [the Second] Circuit to consider the issue have held that affirmative defenses are not subject to the pleading standard of <u>Twombly</u>."). We disagree with plaintiff and hold defendants to a less exacting standard than the one articulated in <u>Twombly</u> and <u>Iqbal</u>.

The reasons behind our conclusion are manifold.  First, the text of the Federal Rules indicates that a plaintiff's initial pleading burden is more significant than that of a defendant raising an affirmative defense.  While Rule 8(a)(2), "which governs pleadings that state claims, requires that pleadings 'show' the pleader's entitlement to relief[,] . . . Rule 8(c)(1), . . . which governs pleading affirmative defenses, only requires a party to 'state' the defense." <u>Scott</u>, 2012 WL 5835232, at *3.  <u>Twombly</u> and <u>Iqbal</u> clarified the pleading requirement under Rule 8(a), but do not reference the standard for affirmative defenses under Rule 8(c).  See <u>Twombly</u>, 550 U.S. at 557; <u>Iqbal</u>, 556 U.S. at 678-79.  In addition to the textual argument, "Form 30 of the Federal Rules of Civil Procedure indicates that notice pleading suffices to plead an affirmative defense." <u>Hon-Hai</u>, 2013 WL 2322675, at *9.  Moreover, from an equitable perspective, it would be unfair to "hold[] the

7

defendant to the same pleading standard as the plaintiff, when the defendant has only a limited time to respond after service of the complaint while plaintiff has until the expiration of the statute of limitations." Tardif v. City of New York, No. 13-CV-4056 (KMW)(FM), 2014 WL 2971004, at *3 (S.D.N.Y. July 2, 2014) (quoting Bayer CropScience AG v. Dow AgroSciences LLC, Civ. 10-1045, 2011 WL 6934557, at *1 (D. Del. Dec. 30, 2011)). Finally, the "low likelihood that motions to strike affirmative defenses would expedite the litigation, given that leave to amend is routinely granted" also militates against holding defendants to the Twombly and Iqbal standard. Id. (quoting Bayer CropScience, 2011 WL 6934557, at *2). This final reason is particularly salient in the context of this litigation, as we previously advised plaintiff's counsel that the instant motion served little purpose in moving this case toward resolution. Therefore, to survive plaintiff's motion, defendants must only state their affirmative defenses pursuant to Rule 8(c) and need not meet the plausibility standard of Twombly and Iqbal.

**B.   Defendants' Affirmative Defenses**

In their answer, defendants raise eleven affirmative defenses. We will address them each in turn.

1.   Bad Faith

Plaintiff challenges defendants' first affirmative defense, bad faith, on the ground that "[t]here is no separable 'bad faith' alleged anywhere in the Answer and Counterclaims." Pl.'s Mot. at 3.  This argument is misguided.  When we construe the answer in the light most favorable to defendants, they sufficiently claim that plaintiff acted in bad faith through its alleged misappropriation of the "Bette Davis" name and by bringing the instant lawsuit when plaintiff itself acted wrongfully.  Answer ¶¶ 50-51.  Whether defendants are ultimately able to prove their allegations is another matter, but because the question of bad faith is "very fact intensive," we cannot say that there is no question of fact that may allow the defense to succeed.  Michelle Pommier Models, Inc. v. Men Women NY Model Mgmt., Inc., No. 97 Civ. 6837(SAS), 1997 WL 724575, at *4 (S.D.N.Y. Nov. 18, 1997).  Defendants have stated their bad faith defense in conformance with the requirements of Rule 8(c), providing plaintiff with adequate notice of the defense; thus, plaintiff's motion to strike this affirmative defense is denied.

2.   Unclean Hands

Next, plaintiff objects to defendants' unclean hands affirmative defense because it is "nothing more than a verbatim recitation of the previous 'defense' of 'bad faith.'"  Pl.'s

9

Mot. at 3 (emphasis in original).   However, this fact does not render the affirmative defense inadequate.   The defenses of bad faith and unclean hands travel in tandem, so the same allegations would plausibly apply to both affirmative defenses. See Deere & Co. v. MTD Holdings, Inc., No. 00 Civ. 5936(LMM), 2004 WL 1794507, at *2 (S.D.N.Y. Aug. 11, 2004) ("It is undisputed that an unclean hands defense requires a finding of bad faith." (quoting Jones Apparel Grp., Inc. v. Piccone, No. 94 CIV. 0754 (LMM), 1994 WL 260767, at *4 (S.D.N.Y. June 8, 1994)) (internal quotation marks omitted)).   Moreover, defendants have done more than invoke the words "unclean hands"; they have alleged that plaintiff actually misappropriated the "Bette Davis" name, image, and likeness.   Answer ¶ 52.   This sufficiently provides plaintiff with notice of defendants' position that Erickson Beamon does not come to this litigation with clean hands.   Cf. Obabueki v. Int'l Bus. Machs. Corp., 145 F. Supp. 2d 371, 401 (S.D.N.Y. 2001) ("Pleading the words 'unclean hands' without more . . . is not a sufficient statement of such defense.").   Therefore, plaintiff's motion to strike this affirmative defense is denied.

### 3.   Failure to State a Claim for Relief

Plaintiff asserts that in stating their affirmative defense of failure to state a claim for relief, defendants must

10

provide an "indication of which of Plaintiff's claims Defendants find improper and what element of the cause of action specifically is lacking." Pl.'s Mot. at 4.  Again, this holds defendants to too high a burden.  "[I]t is well settled that the failure-to-state-a-claim defense is a perfectly appropriate affirmative defense to include in the answer."  S.E.C. v. Toomey, 866 F. Supp. 719, 723 (S.D.N.Y. 1992).  "Although the defense is arguably redundant in that it is essentially a general denial, there is no prejudicial harm to plaintiff and the defense need not be stricken."  Cnty. Vanlines Inc. v. Experian Info. Solutions, Inc., 205 F.R.D. 148, 153 (S.D.N.Y. 2002) (internal quotation marks omitted).  Accordingly, we deny plaintiff's motion to strike this affirmative defense.

 4.   Illegality

 In stating their affirmative defense of illegality, defendants simply assert that "[e]ach and every one of the claims brought by Plaintiff in the Complaint are barred by the doctrine of illegality."  Answer ¶ 55.  "Under the doctrine of illegality a party to an unlawful bargain cannot recover damages for its breach."  Lowenschuss v. Kane, 520 F.2d 255, 266 (2d Cir. 1975).  There is no evidence of a "bargain" here between the parties, let alone an unlawful one that plaintiff breached. In fact, central to defendants' claims is that Erickson Beamon

11

used the "Bette Davis" name for its jewelry <u>absent</u> any arrangement with the Estate or CMG. <u>See</u> Countercl. ¶¶ 25-26. Although we have repeatedly stated that defendants need only "state" their affirmative defenses under Rule 8(c), "the law is clear that the 'mere recitation of . . . legal buzzwords' is not sufficient to state a valid counterclaim." <u>Cartier Int'l AG v.</u> <u>Motion in Time, Inc.</u>, No. 12 Civ. 8216(JMF), 2013 WL 1386975, at *3 (S.D.N.Y. Apr. 5, 2013) (quoting <u>In re Beacon Assocs. Litig.</u>, Nos. 09 Civ. 777(LBS)(AJP), 10 Civ. 8000(LBS)(AJP), 2011 WL 3586129, at *1 (S.D.N.Y. Aug. 11, 2011) (internal quotation marks omitted)). There is no question of law that would allow this defense to succeed, and "inclusion of a defense that must fail as a matter of law prejudices the plaintiff because it will needlessly increase the duration and expense of litigation." <u>Coach, Inc.</u>, 756 F. Supp. 2d at 426. Therefore, this affirmative defense is stricken as impertinent and immaterial.

### 5. <u>Fraud</u>

Defendants also assert fraud as an affirmative defense. While other affirmative defenses must satisfy only the notice requirements of Rule 8(c), "[d]efendants must plead their affirmative defenses alleging fraud with the particularity required by Fed. R. Civ. P. 9(b)." <u>Yurman Design Inc. v.</u> <u>Chaindom Enters., Inc.</u>, No. 99 Civ. 9307(JFK), 2000 WL 897141,

at *3 (S.D.N.Y. July 5, 2000); see also Trustees of Local 813 Ins. Trust Fund v. Wilner's Livery Serv., Inc., No. 11-CV-3180 (DLI)(CLP), 2012 WL 4327070, at *2 (E.D.N.Y. Sept. 19, 2012) ("Rule 9(b) requires a defendant to plead affirmative defenses alleging fraud with particularity."). Here, defendants have plainly failed to meet this burden; their general assertion "[e]ach and every one of the claims brought by the plaintiff in the complaint are barred by the doctrine of fraud" is far from particularized. Answer ¶ 56. Consequently, we strike this affirmative defense as inadequately pled.

### 6. Lack of Standing

Defendants maintain that plaintiff lacks standing under the Declaratory Judgment Act, 28 U.S.C. § 2201, to bring the instant action. See id. ¶¶ 58-60. However, this Court has previously ruled that plaintiff does, in fact, have the right to bring this action under the Declaratory Judgment Act. See Erickson Beamon, 2013 WL 5355010, at *4-6. When an issue has already been decided by a court, it is not properly raised again as an affirmative defense. See Middle East Bank v. Harmony Sportswear, Inc., No. 93 Civ. 228 (JFK), 1994 WL 74057, at *6 (S.D.N.Y. Mar. 10, 1994). Moreover, as required by the Declaratory Judgment Act, there is clearly an "actual controversy" here regarding the use of the Bette Davis name, a

13

fact to which defendants implicitly assent by contesting plaintiff's complaint and filing an answer and counterclaim. 28 U.S.C. § 2201(a). Therefore, plaintiff has standing, and we grant the motion to strike this affirmative defense.

       7.  <u>Failure to Mitigate</u>

The answer also includes the affirmative defense of failure to mitigate. Answer ¶¶ 61-62. Such a defense is not germane to the instant case. In order for failure to mitigate to be a viable defense, the complaint must allege some form of damages that the plaintiff failed to reduce. <u>See</u> <u>Coastal Power Int'l, Ltd. v. Transcontinental Capital Corp.</u>, 10 F. Supp. 2d 345, 370 (S.D.N.Y. 1998) ("[T]he defense of failure to mitigate requires the defendant to establish not only that the plaintiff unreasonably failed to mitigate, but that reasonable efforts would have reduced the damages."). Here, the complaint seeks a declaratory judgment and a permanent injunction; the only monetary compensation sought are attorneys' fees, costs, and expenses. Compl. ¶ 50. Given plaintiff's right to bring this action under the Declaratory Judgment Act, as we have previously established, the costs of litigation do not constitute "damages" that plaintiff should have "mitigated" by electing not to bring this lawsuit. Therefore, we strike this affirmative defense as impertinent and immaterial.

8.   <u>Acknowledgment</u>

Defendants also plead the affirmative defense of acknowledgment, stating that plaintiff's own pleadings "concede that defendants own the rights upon which defendants' claims are based."  Answer ¶ 63.  Plaintiff counters that this assertion "is demonstrably false on even a cursory reading of plaintiff's pleading."  Pl.'s Mot. at 7.  We agree with plaintiff.  Although plaintiff acknowledges using the name "Bette Davis Eyes" for a jewelry collection, it has repeatedly maintained that "[d]efendants have no subsisting trademarks in the name 'Bette Davis,'" and that plaintiff's "use of the name 'Bette Davis Eyes' does not misappropriate Ms. Davis's name, portrait, picture, or voice."  Compl. ¶¶ 32, 46.  While motions to strike affirmative defenses are generally disfavored, they are nonetheless appropriately granted when "the insufficiency of the defense is clearly apparent on the face of the pleading." <u>Wireless Ink Corp. v. Facebook, Inc.</u>, 787 F. Supp. 2d 298, 314 (S.D.N.Y. 2011) (internal quotation marks omitted).  The plain language of the complaint disproves the claim that plaintiff acknowledged defendants' ownership of the disputed intellectual property rights -- if such an acknowledgment occurred, there would be no case.  We therefore strike this affirmative defense.

9.  Acquiescence

The next affirmative defense alleged by defendants is that "Plaintiff's claims are barred by the doctrine of acquiescence." Answer ¶ 64.  "The defense of acquiescence is available when a plaintiff has responded to a defendant's actions with implicit or explicit assurances upon which the defendant relied." Empresa Cubana Del Tabaco v. Culbro Corp., 213 F. Supp. 2d 247, 276 (S.D.N.Y. 2002) (internal quotation marks omitted); see also Johnson & Johnson v. Actavis Grp. hf, No. 06 Civ. 8209(DLC), 2008 WL 228061, at *9 (S.D.N.Y. Jan. 25, 2008) (holding that "the defense of acquiescence embodies active consent" on the part of the plaintiff).  In this context, the acquiescence defense is illogical.  If Erickson Beamon claimed that CMG and the Estate acquiesced to its use of the "Bette Davis" name, such a claim would be plausible, but there is no conceivable set of facts under which plaintiff could have acquiesced to defendants' conduct in this case.  Defendants' assertion of acquiescence as an affirmative defense is nonsensical, and we hereby strike it as immaterial and impertinent.

10.  Defendants' Actions Justified

For their penultimate affirmative defense, defendants assert that their "actions were and are fair, privileged and justified."  Answer ¶ 65.  We recognize the relatively low bar

16

for stating affirmative defenses and the fact that the list of defenses identified in Rule 8(c) is nonexhaustive.  See Jones v. Bock, 549 U.S. 199, 212 (2007).  However, defendants' assertion here is extremely vague and does not provide "plaintiff a fair notice of the nature of the defense."  Tardif, 2014 WL 2971004, at *6.  Consequently, we strike this affirmative defense.

### 11.  Reservation of Affirmative Defenses Not Yet Known

Finally, defendants attempt to reserve the right to assert additional affirmative defenses if and when information learned during the course of discovery suggests that new defenses are warranted.  Answer ¶ 66.  Plaintiff contends that this approach subverts the Federal Rules of Civil Procedure, which indicates that the appropriate mechanism for defendants to add new affirmative defenses is to move to amend their pleadings under Rule 15(a).  Pl.'s Mot. at 8-9.  We concur with plaintiff.  "Should any facts arise during discovery that support any additional defenses, the proper avenue by which defendant can and should proceed is detailed in Fed. R. Civ. P. 15(a)."  Cnty. Vanlines, 205 F.R.D. at 158.  Accordingly, we grant plaintiff's motion to strike this affirmative defense.

*           *           *

In sum, the heightened pleading standard of Twombly and Iqbal does not apply to affirmative defenses.  Therefore, it is

only required that defendants "state" their defenses in such a fashion as to provide plaintiff adequate notice under Rule 8(c). Nevertheless, the majority of the affirmative defenses alleged by defendants fail to meet even the lowest of pleading burdens. The affirmative defenses of illegality, failure to mitigate, and acquiescence are immaterial and impertinent.  In addition, defendants' allegations of fraud and acknowledgment are facially deficient.   Furthermore, the lack of standing affirmative defense and the reservation of defenses not yet known are improper attempts to evade a previous ruling of this Court and the Federal Rules of Civil Procedure.   Finally, defendants' blithe assertion that their actions were justified is simply too vague to provide plaintiff with sufficient notice under Rule 8(c).   Thus, we grant plaintiff's motion to strike the defendants' fourth through eleventh affirmative defenses.

Once we strike these affirmative defenses, three remain: bad faith, unclean hands, and failure to state a claim for relief.  Plaintiff's motion to strike these affirmative defenses is hereby denied.

## II.   Motion to Dismiss Counterclaims

### A.   Legal Standard

In contrast to affirmative defenses, counterclaims must meet the pleading requirements of Rule 8(a), as interpreted by

Twombly and Iqbal, in order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).   See Orientview Techs., 2013 WL 4016302, at *2 ("A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." (quoting Revonate Mfg., LLC v. Acer Am. Corp., No. 12 Civ. 6017(KBF), 2013 WL 342922, at *2 (S.D.N.Y. Jan. 18, 2013))).   In considering defendants' counterclaims, we accept as true all factual allegations in the pleadings and draw all reasonable inferences in the non-moving party's favor. Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009); Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). Nevertheless, the counterclaimant's "[f]actual allegations must be enough to raise a right of relief above the speculative level."   Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 678 (finding that a plaintiff's allegations must demonstrate "more than a sheer possibility that a defendant has acted unlawfully" in order to pass muster under Rule 12(b)(6)).   If the counterclaimant has "not nudged [its] claims across the line from conceivable to plausible," the counterclaim must be dismissed.   Twombly, 550 U.S. at 570.   This pleading standard applies to "all civil actions."   Iqbal, 556 U.S. at 684 (internal quotation marks omitted).

**B.   Defendants' Counterclaims**

Defendants have filed seven counterclaims, each of which we will address in turn.

      1.   <u>Unfair Competition and False Designation of Origin under the Lanham Act</u>

Section 43(a) of the Lanham Act ("Section 43(a)") allows a party to initiate a cause of action against a person who "uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . [that] is likely to cause confusion, or to cause mistake . . . as to the origin, sponsorship, or approval of his or her goods."   15 U.S.C. § 1125(a)(1)(A).   In their counterclaim, defendants have enumerated two causes of action under Section 43(a): unfair competition (Count I) and false designation of origin (Count IV).   "Although the [counterclaim] lists unfair competition and false designation of origin as separate counts, the two are in fact the same cause of action under Section 43(a)."   <u>Allied Interstate LLC v. Kimmel & Silverman P.C.</u>, No. 12 Civ. 4204(LTS)(SN), 2013 WL 4245987, at *5 (S.D.N.Y. Aug. 12, 2013); <u>see also</u> <u>Medisim Ltd. v. BestMed LLC</u>, 861 F. Supp. 2d 158, 178 n.150 ("As the Supreme Court has made clear, the same likelihood of confusion analysis applies regardless of the name given to the trademark claim -- e.g. false designation of origin, infringement, or something else."

20

(citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780 (1992))).  Therefore, we will analyze these two claims together.[2]

        "To succeed on a section 43(a)(1)(A) claim, a plaintiff must prove (1) that the mark or dress is distinctive as to the source of the good or service at issue, and (2) that there is the likelihood of confusion between the plaintiff's good or service and that of the defendant."  ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 154 (2d Cir. 2007); see also Savin Corp. v. Savin Grp., 391 F.3d 439, 456 (2d Cir. 2004) ("A claim of trademark infringement is analyzed under a familiar two-prong test.  The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether the defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." (quoting Virgin Enters., Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003)) (internal  quotation  marks  and  alterations  omitted)). "Preliminary to making this showing, however, a plaintiff must

_____

[2] Although defendants have pled two counterclaims when one would have sufficed, we decline to dismiss either of the counterclaims at this stage. We reach this decision because plaintiff experiences no prejudice as a result of the continued inclusion of both counterclaims -- there is no possibility for defendants to receive additional damages as a result of the duplicative claim and the scope of future discovery remains unchanged -- and, as we discuss, the Lanham Act claims are adequately pled.  See Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano, 03 Civ. 15(RWS), 2007 WL 1687044, at *10 (S.D.N.Y. June 11, 2007) (declining to dismiss pleadings as redundant on a motion to dismiss when the redundant claim may be valid).

demonstrate its own right to use the mark or dress in question." ITC Ltd., 482 F.3d at 154.

Defendants' have sufficiently pled the required elements to survive a motion to dismiss. As an initial matter, defendants maintain that they own all intellectual property affiliated with Bette Davis; based on this averment, it is plausible that defendants own the exclusive right to use the "Bette Davis" name in commerce. See, e.g., Countercl. ¶¶ 3, 12, 26. It may be that neither defendants nor their licensees actually used the mark in commerce, a fact which would undermine defendants' Lanham Act claims. See ITC Ltd., 482 F.3d at 146 (stating "the well-established principle that trademark rights are acquired and maintained through use of a particular mark"). However, this is a question of fact ill-suited for determination at the motion to dismiss phase. So, too, is the question of the likelihood of consumer confusion. See Courtenay Commc'ns Corp. v. Hall, 334 F.3d 210, 215 (2d Cir. 2003) (finding the pleadings "insufficient for determining the critical fact of how the public views" the mark at issue); Quality Serv. Grp. v. LJMJR Corp., 831 F. Supp. 2d 705, 713 (S.D.N.Y. 2011) (deciding that the comparison of two similar names in a likelihood of consumer confusion analysis was "a fact-specific inquiry that is inappropriate for determination on a motion for judgment on

[the] pleadings"). And finally, the name "Bette Davis" is certainly distinctive with regard to its source -- this was a woman, after all, whose eyes inspired a chart-topping song well after her popularity had peaked. See Compl. ¶¶ 7-10. Accordingly, we decline to dismiss defendants' counterclaims under Section 43(a) of the Lanham Act.

### 2.  Common Law Unfair Competition

"The elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims." ESPN, Inc. v. Quiksilver, Inc., 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2011). In addition to pleading the Lanham Act elements, however, a party stating a claim of unfair competition under New York law must plead that the alleged infringer acted in bad faith. See Empresa Cubana del Tabaco v. Culbro Corp., 399 F.3d 462, 485 (2d Cir. 2005); Genesee Brewing Co., Inc. v. Stroh Brewing Co., 124 F.3d 137, 149 (2d Cir. 1997). Because we have found that defendants have stated a claim for unfair competition under Section 43(a), the only remaining question is whether defendants have adequately pled that plaintiff acted in bad faith.

In their counterclaim, defendants allege that plaintiff "knowingly and intentionally infringed upon" their trademark rights "with the intent to unfairly trade on and/or

misappropriate the reputation and goodwill of the late Bette Davis." Countercl. ¶ 31.   We find this assertion of bad faith sufficient at this stage of the litigation.   At the pleading stage, "it is not the role of the Court . . . to sift through a meager record and decide which litigant is acting in good or bad faith."   Streit v. Bushnell, 424 F. Supp. 2d 633, 638 (S.D.N.Y. 2006).   Therefore, although defendants' allegations of plaintiff's bad faith are reasonably thin at this point, they are still adequate to state the counterclaim of unfair competition under New York law.

> ### 3.   Unjust Enrichment

In order to state a claim for unjust enrichment under New York law, defendants must allege that (1) plaintiff was enriched, (2) at defendants' expense, and (3) that it is against equity and good conscience to permit plaintiff to retain what defendants aim to recover.   Georgia Malone & Co., Inc. v. Rieder, 973 N.E.2d 743, 746 (N.Y. 2012); see also Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) ("To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that 'equity and good conscience' require restitution.").   Here, defendants have adequately pled each of the three elements.

First, defendants allege that plaintiff's gross sales of the allegedly infringing merchandise totaled $163,980. Countercl. ¶ 24.  This sum certainly constitutes "enrichment" sufficient to meet the first prong of the test.  Second, defendants' assertion that they were in the exclusive position to authorize the use of the "Bette Davis" name would presumably entitle them to at least a portion of the jewelry sale proceeds. See id. ¶ 26.  Thus, taking the allegations in the counterclaim as true, a portion of Erickson Beamon's profits were at defendants' expense.  Third, if plaintiff did, in fact, profit from the misappropriation of the defendants' mark, it would be against equity to allow it to retain the money earned from this wrongful conduct.  Accordingly, defendants have adequately pled their unjust enrichment counterclaim under New York law.

### 4.   Dilution

Defendants have also filed a counterclaim for dilution under both federal and state law.  To state a dilution claim under the Lanham Act, 11 U.S.C. § 1125(c), a plaintiff must plead that: "(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and

services." Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 118 (2d Cir. 2006) (quoting Savin Corp., 391 F.3d at 448-49) (internal quotation marks omitted). Plaintiff focuses its argument on first prong of the test, claiming that defendants have set forth "no more than a 'threadbare recital' of the fame element of a federal dilution cause of action." Pl.'s Mot. at 13. However, defendants have pled that Bette Davis is "widely recognized" and that she had an "acclaimed career [with] the attendant fame and prominence." Countercl. ¶ 11. The counterclaim makes clear that Bette Davis was not someone who enjoyed only "brief fame in a small part of the country, or among a small segment of the population." TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc., 244 F.3d 88, 99 (2d Cir. 2001). Rather, she was someone who achieved such renown that, as plaintiff itself recognizes, a very popular song was written about her eyes. See Compl. ¶¶ 7-10. We therefore find it plausible that "Bette Davis" constitutes a famous mark and decline to dismiss the federal dilution counterclaim.

To state a claim for dilution pursuant to New York General Business Law § 360-*l*, a party must plead: "(1) a distinctive mark capable of being diluted and (2) a likelihood of dilution." Akiro LLC v. House of Cheatham, Inc., 946 F. Supp. 2d 324, 342 (S.D.N.Y. 2013) (internal quotation marks omitted). With regard

26

to the first element, because we find it plausible that "Bette
Davis" is a famous mark under federal law, it is sufficiently
distinctive under state law.   See Starbucks Corp. v. Wolfe's
Borough Coffee, Inc., 588 F.3d 97, 114 (2d Cir. 2009) ("Unlike
federal trademark dilution law . . . New York's trademark
dilution law does not require a mark to be 'famous' for
protection against dilution to apply.").   In meeting the second
prong, the key is that "New York law does not permit a dilution
claim unless the marks are 'substantially' similar."   Id.; see
also Mobileye, Inc. v. Picitup Corp., 928 F. Supp. 2d 759, 782
(S.D.N.Y. 2013).   In the instant case, however, the substantial
similarity is obvious: both "Bette Davis," the mark claimed by
defendants, and "Bette Davis Eyes," the moniker used for the
jewelry line, contain the actress's name spelled in her
distinctive fashion.   Thus, plaintiff has adequately pled
dilution under New York state law as well.

### 5.   Deceptive Business Practices

Stating a claim for deceptive business practices under New
York General Business Law § 349 requires that a party "prove
three elements: first, that the challenged act or practice was
consumer-oriented; second, that it was misleading in a material
way; and third, that the [claimant] suffered injury as a result
of the deceptive act."   Biosafe-One, Inc. v. Hawks, 639 F. Supp.

27

2d 358, 367 (S.D.N.Y. 2009), aff'd, 379 F. App'x 4 (2d Cir. 2010) (quoting Stutman v. Chem. Bank, 731 N.E.2d 608, 611 (N.Y. 2000)).  Plaintiff argues that defendants have failed to plead the second and third elements: materiality and injury.  Pl.'s Mot. at 14-15.  However, this argument is unavailing.

Focusing on the second element, defendants have claimed that the term "Bette Davis Eyes" is materially misleading as to the source of the merchandise, and we find that it is a question of fact whether this label actually caused consumers to believe that the Estate had endorsed the jewelry at issue.  See Countercl. ¶ 30 (suggesting that "potential customers will be misled and confused regarding the source" of plaintiff's products).  This prong is akin to the "likelihood of consumer confusion" element of an unfair competition claim -- in most circumstances, including this one, the matter is not conducive to resolution on the pleadings.  For the harm element of the deceptive business practices counterclaim, defendants have adequately pled that plaintiff's use of the "Bette Davis" mark has caused them injury.  See id. ¶¶ 26, 27, 29.  Consequently, plaintiff's motion to dismiss this counterclaim is denied.

      6.  Intentional Interference with Prospective Economic Advantage

Defendants' final counterclaim is for intentional interference with prospective economic advantage.  To state this

claim, "four conditions must be met: (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008). Plaintiff's argument to dismiss this counterclaim is based on its assertion that "Defendants nowhere allege that they had any ongoing relationship with any third party nor that Plaintiff interfered with such relationship." Pl.'s Mot. at 15.

Unlike its previous arguments, plaintiff's reasoning for dismissing this cause of action is compelling. Rather than allege any previous or current relationship with a third party, defendants counterclaim references only potential licensing agreements in the future. See Countercl. ¶ 26 (asserting that plaintiff's use of the "Bette Davis" name is "highly injurious to [defendants'] collective ability to license and or enforce" the intellectual property at issue). While plaintiff's conduct may have harmed defendants' ability to profit from the "Bette Davis" name going forward, there is no allegation in the counterclaim that defendants maintained any business

relationships with which plaintiff interfered.  Thus, we grant plaintiff's motion to dismiss defendants' seventh counterclaim.

**CONCLUSION**

For the foregoing reasons, Erickson Beamon's motion to dismiss defendants' affirmative defenses and counterclaims is granted in part and denied in part.  Defendants have adequately stated the affirmative defenses of bad faith, unclean hands, and failure to state a claim for relief, but we hereby strike the remaining affirmative defenses.  With regard to defendants' counterclaims, we grant plaintiff's motion to dismiss only the seventh count, the counterclaim for intentional interference with prospective economic advantage; the other six counterclaims are sufficiently alleged, and plaintiff's motion to dismiss them is denied.

In closing, we note that over the course of many years, this Court has developed a set of Individual Practices designed to preserve judicial resources, clarify relevant issues, and streamline litigation.  In filing this motion without previously submitting a pre-motion letter, plaintiff ignored these Individual Practices and necessitated the consideration of a motion that, as demonstrated above, has not contributed to the resolution of this case.  In fact, we advised plaintiff's counsel, before briefing had been completed, that the instant

30

motion would likely accomplish little even if we found it meritorious, and we suggested that he reconsider its filing. See Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 652 (2d Cir. 1987) (recognizing that pre-motion conferences "serve the useful purpose of narrowing and resolving conflicts between the parties and preventing the filing of unnecessary papers"); see also Raymond Weil, S.A. v. Theron, 585 F. Supp. 2d 473, 489-90 (S.D.N.Y. 2008) ("[A] motion to strike boilerplate affirmative defenses . . . wastes the client's money and the court's time."). Nevertheless, plaintiff's counsel elected to proceed with the instant motion, and now, after much time has been spent and much ink has been spilled, this case remains in a nearly identical posture to where it was more than seven months ago. We hope and anticipate that greater judgment will be exercised in the future.

        This Memorandum and Order resolves docket number 49.


        **SO ORDERED.**


Dated:     New York, New York
           August 12, 2014

                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to the following:

**Attorneys for Plaintiff**
Jeffrey Sonnabend, Esq.
SonnabendLaw
600 Prospect Avenue
Brooklyn, NY 11215

**Attorneys for Defendants**
Theodore J. Minch, Esq.
SovichMinch LLP
10099 Chesapeake Drive, Suite 100
McCordsville, IN 46055

Bonnie L. Mohr, Esq.
Law Offices of Bonnie L. Mohr, PLLC
225 West 34th Street, 9th Floor
New York, NY 10122